Filed 7/8/16  P. v. Nasleh CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063132 |
| v. | (Super.Ct.No. FWV1402953) |
| MOHAMMED SAMII EL NASLEH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Mary E. Fuller, Judge.  Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis, Felicity Senoski and Kathryn A. Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Mohammed Samii El Nasleh guilty of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(4).)[1, 2] The trial court granted defendant three years of supervised probation with the condition that he serve 365 days in the county jail. Defendant raises two issues on appeal. First, defendant contends his right of due process was violated by the combination of an ambiguous jury instruction and an erroneous argument by the prosecutor. Second, defendant asserts the prosecutor committed misconduct, but to the extent that issue has been forfeited, defendant contends his trial counsel rendered ineffective assistance. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.     PROSECUTION'S CASE

On July 27, 2014, the victim met her friends at a restaurant at approximately 11:00 a.m. One of the victim's friends was dating one of Thomas Rojas's friends. The victim met Rojas for the first time at the restaurant. As the day progressed, the victim, Rojas, and the group of friends went to a pool party. The party extended into the night. The victim and Rojas were drinking alcohol. The victim had her brother drive her car away from the party, to another location, so the victim would not drive while intoxicated.

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

[2] The jury found defendant not guilty of (1) assault with intent to rape (§ 220, subd. (a)), and (2) robbery (§ 211).

The victim and Rojas wanted to continue spending time together. Rojas telephoned his roommate, defendant, to pick them up. Defendant drove Rojas and the victim to defendant's and Rojas's apartment in Ontario. Rojas and the victim continued drinking alcohol at the apartment. When they finished the alcohol in the apartment, defendant, who was more sober than Rojas and the victim, offered to drive to the store.

The victim and defendant went to a liquor store. The victim sat in the passenger seat while defendant drove. Defendant entered the store and purchased a small bottle of liquor, while the victim remained in the car. Defendant returned to the car and asked the victim for money to repay him for the purchase. The victim had not agreed to pay for the alcohol, so she refused to give defendant money.

Defendant drove to a bank. Defendant asked the victim for the PIN for her bank card. The victim refused to give defendant her PIN. Defendant became aggressive, calling the victim a "bitch." The victim picked up her telephone to call for help, but the telephone battery did not have power. Defendant went through the victim's purse and took $80 in cash. Defendant continued yelling at the victim.

Defendant drove to a parking lot where other people were not around. Defendant struck the victim. Defendant parked the car. Defendant climbed on top of the victim. Defendant sucked on the victim's neck, touched her breast, and tried to pull her dress up. The victim struggled to push defendant off of her, breaking a fingernail in the struggle. Defendant struck the victim's face, and the victim temporarily lost consciousness. Defendant placed his hand on the victim's neck, which caused the

victim to have difficulty breathing. The victim believed defendant was attempting to engage in intercourse.

Eventually, defendant ceased the attack and drove back to the apartment. The victim ran into the apartment, cried, told Rojas about the attack, and asked for help. Rojas called a taxi for the victim. The victim left in the taxi.

The next morning, the victim told her sister-in-law about the attack. The victim's sister-in-law drove the victim to a police station so the victim could report the crime. While at the police station, photographs were taken of the victim's face, neck, chest, arms, hands, and thighs. The photographs reflected the victim had a broken fingernail; a bruise on her hand; a bruise around her right eye, where she was punched; a bruise near her hairline; bruises on her left arm; a bruise above her breast; scratches near her shoulder; and scratches toward the inside of her thigh. The victim said the bruises, scratches, and broken fingernail were caused by defendant attacking her in the car.

B.    DEFENDANT'S CASE

Defendant testified at trial. The following is defendant's version of the events. Defendant picked up the victim and Rojas from the pool party. The victim was intoxicated. On the drive to the apartment, the victim was "[s]loppy"; she rubbed defendant's shoulders, kissed his ears and neck, tried to grab the steering wheel, was play fighting with Rojas, and was "rolling" around in the backseat.

Defendant parked his car at the apartment complex. While in the parked car, Rojas lifted the victim's dress to show defendant that the victim was not wearing

4

underwear. Defendant, the victim, and Rojas, went to the apartment. The victim and Rojas continued play fighting in the apartment. Rojas slammed the victim down three times, once on the ground and twice on the couch.

Rojas asked defendant to get alcohol for Rojas and the victim. Rojas told the victim to go with defendant because the victim said she would purchase the alcohol. The victim gave her bank card to defendant and told him her PIN. Defendant drove the victim to the bank. The victim was asleep in the car. Defendant used the victim's card at the ATM, but the PIN was incorrect. Defendant woke the victim. The victim told defendant to pay for the alcohol, and she would pay him back.

Defendant drove to a gas station. Defendant purchased "the cheapest vodka" and a sports drink. Defendant paid cash for the beverages and left the store. Defendant drove back to the bank. Defendant asked for the victim's ATM card so she could repay him for the alcohol. The victim said, "'I don't want to buy the alcohol.'" Defendant said, "'Please, can you pay me the money back? You said you would pay it back.'" The victim "didn't even care." Defendant was angry and lost his temper; he called the victim a "spoiled little brat" and a "bitch."

Defendant drove the victim back to the apartment because defendant wanted Rojas to "deal with [the victim]." Defendant entered the apartment before the victim. Defendant threw the alcohol on the floor and ordered Rojas to "get her out of the apartment." Defendant went to his bedroom to watch television. Defendant did not strike or touch the victim.

C.    JURY INSTRUCTION

The trial court instructed the jury with CALCRIM No. 226.  The instruction provided, "You alone must judge the credibility or believability of the witnesses.  In deciding whether testimony is true and accurate, use your common sense and experience.  You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have.  You may believe all, part, or none of any witness's testimony.  Consider the testimony of each witness and decide how much of it you believe.

"In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony.  Among the factors that you may consider are:

"How well could the witness see, hear, or otherwise perceive the things about which the witness testified?

"How well was the witness able to remember and describe what happened?

"What was the witness's behavior while testifying?

"Did the witness understand the questions and answer them directly?

"Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, *or a personal interest in how the case is decided*?"  (Italics added.)  The instruction continued with additional factors for the jury to consider.

D.       PROSECUTOR'S ARGUMENT

During closing argument, the prosecutor made the following statements:

"Witness credibility.  That's going to be the most important jury instruction for you.

You have three witnesses—four witnesses.  Three of which were actually present during

portions of July 27th/28th.  You alone must judge the credibility of these witnesses.

"CALCRIM 226.  It's going to give you a list of criteria you can use.  Who did

we have?  We had [the victim], who had just met both of these men, right?  She didn't

know [Rojas].  She knew his friends.  She had never met the defendant.  Even [Rojas]

had to agree she had no reason, no motive to lie on either one of them.  She gets nothing

out of it by him going to trial.  Nothing.  She's just telling you exactly what happened to

her that day.

"Corporal Ritchey, the officer in this case, he's the one who did the interviews.

He testified and told you exactly what he saw, exactly what they did and exactly what

they told him.  He asked the questions.

"Thomas Rojas is a friend of the defendant.  You can use that for possible bias.

His testimony was 12 years of friendship.  They were roommates, living together.  He

was there.  He didn't even call police when he sees this hysterical girl crying.  Doesn't

ask, should I call police?  He hears she's been robbed, punched by his best friend.  They

send her on her way with a taxi.  He doesn't want to get involved that way.

"Then you have the defendant.  Well, the defendant has a stake in the matter.

He's one of the dogs in the fight."  The prosecutor argued, "[The victim] is certain in

regards to the sequence of events and the defendant's statement just does not—makes

7

absolutely no sense." The prosecutor made further arguments, and again said in reference to defendant's version of events, "It made no sense" and "It makes no sense."

## DISCUSSION

### A.    DUE PROCESS

#### 1.    *CONTENTION*

Defendant contends his right of due process was violated by the combination of CALCRIM No. 226 and the prosecutor's closing argument. Defendant asserts the instruction and argument permitted the jury to question defendant's credibility solely because he had been charged with a crime, which violates the presumption of innocence.[3]

#### 2.    *STANDARD OF REVIEW*

Because defendant contends his right of due process was violated, we apply the de novo standard of review. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183.)

#### 3.    *THE INSTRUCTION ACCURATELY REFLECTS THE LAW*

Evidence Code section 780 sets forth factors for a trier of fact to consider when determining the credibility of a witness. One of the factors is, "The existence or nonexistence of a bias, interest, or other motive." (Evid. Code, § 780, subd. (f).) In *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 883 through 884, our Supreme Court

---

[3] The People contend defendant forfeited this issue for appeal by not objecting in the trial court. Because defendant has asserted his right of due process was violated, we address the merits of the issue. (*People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7; § 1259 [appellate court can review any ruling or instructional error without an objection having been raised if a substantial right of defendant has been affected].)

held a trial court must sua sponte, in every criminal case, instruct on the credibility of witnesses but could omit sections of the jury instruction that were not relevant to the particular case.

The witness credibility instruction at the time of *Rincon-Pineda* was CALJIC No. 2.20, which reflected the language of Evidence Code section 780, i.e., "The existence or nonexistence of a bias, interest, or other motive." (*People v. Rincon-Pineda*, *supra*, 14 Cal.3d at p. 883, fn. 7.) The Supreme Court held that particular language "should be given in any case in which the victim of the alleged offense has testified for the prosecution, regardless of whether specific evidence of any motive or disposition to misstate facts on the part of the complaining witness has been adduced by the defendant." (*Id.* at p. 883.)

In *People v. Diaz* (2015) 60 Cal.4th 1176, 1188 through 1189, our Supreme Court considered whether the trial court was still obliged to instruct the jury "to consider a defendant's extrajudicial statements with caution" when (1) the statute relevant to that instruction had been repealed, and (2) courts are required to instruct on witness credibility sua sponte in every criminal case.

In *Diaz*, the Supreme Court wrote, "Consistent with the instructions required by *Rincon-Pineda*, current instructions advise the jury to consider, among other things, how well a witness could 'see, hear, or otherwise perceive the things about which the witness testified,' how well the witness was 'able to remember and describe what happened,' and whether the witness's testimony was influenced by 'bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how

9

the case is decided.' (CALCRIM No. 226.) These general instructions, like the cautionary instruction, 'aid the jury in determining whether [the defendant's extrajudicial statement] was in fact made.' [Citation.] . . . Because courts must now instruct the jury on these general factors in every case, we conclude that the cautionary instruction on defendant's statements is no longer so necessary to the jury's understanding of the case as to require the court to give it sua sponte." (*People v. Diaz*, *supra*, 60 Cal.4th at p. 1191.)

Given our Supreme Court's review of CALCRIM No. 226, there is strong support for the conclusion that the jury instruction is an accurate statement of the law set forth in Evidence Code section 780, subdivision (f). The statute allows a trier of fact to consider "[t]he existence or nonexistence of a bias, interest, or other motive," (Evid. Code, § 780, subd (f)) and the instruction permits the jury to consider if the witness had "a personal interest in how the case is decided." (CALCRIM No. 226.)

"A personal interest in how the case is decided" can create a "motive." The Supreme Court has defined "motive" as "the reason a person chooses to commit a crime." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 504.) The instruction for the jury to consider a witness's personal interest in the case, is informing the jury it can consider whether the witness had a reason, i.e., motive, to be more or less truthful. Thus, the jury instruction accurately reflects the law set forth in Evidence Code section 780, subdivision (f).

## 4.    *PRESUMPTION OF INNOCENCE*

Defendant contends the instruction combined with the prosecutor's argument permitted the jury to question defendant's credibility solely because he had been charged with a crime, which violates the presumption of innocence.

As set forth *ante*, the instruction provided, in relevant part, "In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are . . . ." Contrary to defendant's position, the instruction did not single out defendant, it discusses witnesses in general. Additionally, the instruction did not require the jury to consider the factor of personal interest. The instruction uses the permissive word "may," so the jury was free to reject that factor.

Our Supreme Court has explained, "'CALJIC No. 2.21 does nothing more than explain to a jury one of the tests they may use in resolving a credibility dispute.' [Citation.] 'The weaknesses in [the defendant's] testimony should not be ignored or given preferential treatment not granted to the testimony of any other witness. As it has been aptly noted in other contexts, a defendant who elects to testify in his own behalf is not entitled to a false aura of veracity.'" (*People v. Beardslee* (1991) 53 Cal.3d 68, 95.) In sum, "the instruction is neutrally phrased and does not focus attention on a particular witness." (*People v. Turner* (1990) 50 Cal.3d 668, 699 [discussing CALJIC 2.21].)

This same analysis applies to CALCRIM No. 226. CALCRIM No. 226 is neutrally phrased, in that it (1) discusses witnesses in general and does not single out

11

defendant; and (2) uses permissive wording, which allows the jury to reject the factors. The instruction does not treat defendant differently than any other witness.

### 5. PROSECUTOR'S ARGUMENT

We now examine whether the prosecutor's argument shifted the meaning of the jury instruction in such a way as to deny defendant his right of due process. At the outset, we note the trial court instructed the jury, "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM No. 200.) We presume the jury followed this instruction, and therefore, the prosecutor's comments would not have caused a violation of defendant's right of due process because the jury would have applied the law as properly set forth in CALCRIM No. 226. Nevertheless, for the sake of thoroughness, we will address the merits of defendant's contention concerning the prosecutor's argument.

The prosecutor argued that the victim "had no reason, no motive to lie on either one of them. She gets nothing out of it by him going to trial. Nothing." The prosecutor also argued, "Then you have the defendant. Well, the defendant has a stake in the matter. He's one of the dogs in the fight." Defendant contends this argument "urged the jury to assume that [defendant] lacked credibility because he had been charged."

As explained *ante*, the instruction is neutrally worded and does not single out a particular witness. The prosecutor's argument also did not single out a particular witness. The prosecutor explained (1) why the victim did not have a personal interest in the case; (2) why Corporal Ritchey did not have a personal interest in the case; (3) why

12

Rojas may have had a personal interest in the case; and (4) why defendant had a personal interest in the case. The prosecutor did not single out defendant, but tried to explain why the testimony favorable to the prosecution was credible, and why the testimony unfavorable to the prosecution should be discredited. The prosecutor asserted the jury should discredit defendant's testimony because defendant had a motive to lie and that defendant was lying, which was why defendant's version of the events "makes absolutely no sense."

Defendant's trial counsel used the same instruction (CALCRIM No. 226) to argue the victim's testimony was not credible. Defendant's trial counsel argued, "Witness credibility 226. Okay. [¶] It gives that list of things you're supposed to consider. You should consider it. You should consider it with all the witnesses." Defendant's trial counsel then focused on the victim. He explained (1) the victim was intoxicated and could not accurately recall the events; (2) the victim was combative and hostile during cross-examination; (3) that a "real" victim would have a personal interest in the outcome of the criminal case; and (4) the victim had made inconsistent statements, especially in regard to the timing of the events.

The point of summarizing the arguments is that the instruction is useful to both the prosecution and the defense. It is a neutrally worded instruction. The prosecutor did not focus the instruction on defendant; rather, the prosecutor applied the instruction to all the witnesses. Defense counsel also urged the jury to apply the instruction to all the witnesses. Thus, the arguments did not alter the meaning of the instruction such that the jury could have understood the instruction as only applying to defendant or as

13

applying in a peculiar way to defendant.  Accordingly, we conclude defendant's right of due process was not violated.

Moreover, to the extent the jury chose to apply the instruction to defendant's testimony, we again note, "'The weaknesses in [the defendant's] testimony should not be ignored or given preferential treatment not granted to the testimony of any other witness.  As it has been aptly noted in other contexts, a defendant who elects to testify in his own behalf is not entitled to a false aura of veracity." (*People v. Beardslee*, *supra*, 53 Cal.3d at p. 95.)

B.      PROSECUTORIAL MISCONDUCT

1.      *PROCEDURAL HISTORY*

During closing arguments, the prosecutor made the following statements:

First:  "Your most important tool as jurors is common sense and logic.  Your common sense tells you that on July 28th, the defendant got so mad at this girl because he didn't get his way; that he took her to the ATM, that he tried to rob her, and when she wouldn't give him a simple thing like her PIN number, wouldn't give him what he was asking for, he called her a cunt, a bitch and he starts to hit her as he drives away."

Second:  "And he gets up here and tells you he just randomly takes her to the ATM for $11.  Something that took six minutes and to tr[y] to convince her to pay him back.  No.  That's not reasonable.  The only reasonable person that came in here was [the victim]."

Third:  "The reasonable doubt standard:  It's a reasonable one, a fair one.  It's just.  It's the People's burden.  That burden has been met in this courtroom beyond a

14

reasonable doubt. That's the standard. You have to have an abiding conviction that the charge is true. You have to think to yourself, he did it. You know that he did.

"It's not beyond a shadow of a doubt or a hundred percent certainty, or possibility how the defense was going on and on about doing years, things like that. No. You just decide what is reasonable and whether or not you know that he did it. And you know he did."

Fourth: "She told you that that night she had been drinking, but she knew what was going on. A lot of it had to do with the fact she was trying to push this out of her memory. That's reasonable. And that's the standard."

Fifth: "Now, one of you will become the foreperson in this case. As foreperson, the burden of proof is very important. You might have someone who says, what if this happened or is it possible this could have happened? You have to remind them this is not a case about what-ifs. It's what we saw and heard in this courtroom. You have a certain amount of facts. You have the testimony. Then that's it. There's no imaginary things. It's just about what's reasonable and what's not reasonable. You make a decision as jurors."

## 2. *ANALYSIS*

### a. Contention

Defendant contends the prosecutor committed misconduct by (1) reducing the reasonable doubt standard of proof to a determination of whether the victim's version of events was more reasonable than defendant's version of the events; and (2) elevating the

15

jury foreperson's role and opinion above those of the other jurors, so as to infringe on defendant's right to each juror's individual judgment.

### b.    Forfeiture

The People contend defendant forfeited the issue of prosecutorial misconduct by failing to raise it in the trial court.  "[A] claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury." (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

Defendant did not object to the prosecutor's statements about the reasonable doubt standard or the jury foreperson's role.  If defendant had objected, the trial court could have considered defendant's position and chosen to admonish the jury, if necessary.  Assuming defendant is correct, and the prosecutor erred, an admonition could have fixed the error because (1) the trial court could have reminded the jury and the prosecutor of the definition of "reasonable doubt"; and (2) the trial court could have explained the role of a jury foreperson.  Therefore, both errors were curable by admonition, if an objection had been raised.  Thus, we conclude defendant forfeited the prosecutorial misconduct issue for appeal.

### c.    Ineffective Assistance

#### i.    *Contention*

Defendant asserts that if the prosecutorial misconduct issue was forfeited, then his trial counsel rendered ineffective assistance by failing to object.

16

ii.      *Law*

"To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Scott* (1997) 15 Cal.4th 1188, 1211.)

iii.      *Professional Norms*

(a)      <u>*Law*</u>

"'In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny . . .' and must 'view and assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act.' [Citation.] Although deference is not abdication [citation], courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight." (*People v. Scott*, *supra*, 15 Cal.4th at p. 1212.) The "failure to object to evidence or argument seldom establishes counsel's incompetence." (*People v. Ghent* (1987) 43 Cal.3d 739, 772; *People v. Williams* (1997) 16 Cal.4th 153, 215.)

(b)      <u>*Reasonable Doubt Standard*</u>

We begin with the prosecutor's comments on the reasonable doubt standard. The prosecutor made a variety of comments about the reasonable doubt standard. In addition to the comments listed *ante*, the prosecutor said: (1) "So that element has been

17

proven beyond a reasonable doubt"; (2) "So element two has also been proven beyond a reasonable doubt"; (3) "Count 1, element four is proven beyond a reasonable doubt"; (4) "So Count 1 has been proven beyond a reasonable doubt"; (5) "That's been proven beyond a reasonable doubt"; (6) "Element three was proven beyond a reasonable doubt"; (7) "It has been proven beyond a reasonable doubt"; (8) "So in terms of all five elements, those have been proven beyond a reasonable doubt"; (9) "In terms of element one, it has been met beyond a reasonable doubt"; (10) "So element three was also proven beyond a reasonable doubt"; (11) "Element four has been proven beyond a reasonable doubt"; (12) "The standard of proof in this [case] is reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt"; and (13) "The reasonable doubt standard: It's a reasonable one, a fair one. It's just. It's the People's burden. That burden has been met in this courtroom beyond a reasonable doubt. That's the standard. You have to have an abiding conviction that the charge is true. You have to think to yourself, he did it."

Given the prosecutor's numerous reminders to the jury that the standard of proof is beyond a reasonable doubt, defendant's trial counsel could have reasonably chosen not to object to the prosecutor's comments about plain reasonableness. Defendant's trial counsel could have logically deduced that objecting to the prosecutor's reasonableness comments would only draw closer attention to the prosecutor's point that defendant's version of events was questionable in certain respects. (See *People v.*

18

*Ghent*, *supra*, 43 Cal.3d at p. 773 ["Counsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments"].) Because the prosecutor provided repeated reminders about the correct standard of proof, it was a rational tactical choice not to object to the comments about reasonableness because the jury was unlikely to be confused about the standard of proof, and the objection could have drawn more attention to the problems with defendant's testimony. Accordingly, we conclude trial counsel's performance did not fall below prevailing professional norms as to the prosecutor's reasonableness comments.

(c)     *Jury Foreperson*

Next, we address defendant's trial counsel's lack of objection to the prosecutor's comments about the jury foreperson. Defendant contends the prosecutor asserted the jury foreperson "has a special role as the gatekeeper of the burden of proof. The foreperson should listen to the other jurors' arguments and decide whether the argument involved exploring doubts over the evidence."

As set forth *ante*, the prosecutor said, "As foreperson, the burden of proof is very important. You might have someone who says, what if this happened or is it possible this could have happened? You have to remind them this is not a case about what-ifs. It's what we saw and heard in this courtroom. You have a certain amount of facts. You have the testimony. Then that's it. There's no imaginary things. It's just about what's reasonable and what's not reasonable. You make a decision as jurors."

19

The prosecutor said to the jury, "You make a decision as jurors." Defendant's trial counsel could have reasonably determined the prosecutor cured any misstatement about the foreperson by clarifying that decisions are made by the "jurors"—plural, not singular. By explaining that jurors (plural) make decisions, defense counsel could reasonably understand the prosecutor's comments as reflecting all jurors are equally involved in the decision-making process. Because defendant's trial counsel could reasonably conclude the prosecutor corrected any misstatement about the foreperson's role, it was within prevailing professional norms not to object. (See *People v. Adams* (2014) 60 Cal.4th 541, 569 [the point of objecting and requesting an admonition is to cure the harm].)

In sum, we conclude defendant's trial counsel's assistance fell within the prevailing professional norms. Therefore, counsel was not ineffective.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

HOLLENHORST
Acting P. J.

SLOUGH
J.

20